### THE ADMIRAL GOODRICH.

### SHELL CO. OF CALIFORNIA v. PACIFIC S. S. CO.

(Circuit Court of Appeals, Ninth Circuit. April 2, 1923.)

#### No. 3838.

Maritime liens ⚙➾30—Furnisher of fuel oil on order of charterer without inquiry held not entitled to lien.

    One having a contract with a steamship company to furnish fuel oil to certain vessels, who, on order of the company, furnished oil to a vessel not named in the contract, the ownership of which he did not .know, and without inquiry, which would have disclosed that the company was a charterer, without power under the terms of the charter to bind the vessel, *held*, under Act June 23, 1910, § 3 (Comp. St. § 7785), not entitled to a lien.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by the Shell Company of California against the Steamship Admiral Goodrich; the Pacific Steamship Company, claimant. Decree for respondent, and libelant appeals. Affirmed.

For opinion below, see 279 Fed. 126.

Tucker & Hyland, Wilmon Tucker; Ivan L. Hyland, and Ford Q. Elvidge, all of Seattle, Wash., and Thacher & Wright, of San Francisco, Cal. (Thomas A. Thacher and Harrison A. Jones, both of San Francisco, Cal., of counsel), for appellant.

B. S. Grosscup, of Seattle, Wash., W. C. Morrow, of Tacoma, Wash., and W. A. Johnson, of Seattle, Wash., for appellee.

Before MORROW and HUNT, Circuit Judges, and DIETRICH, District Judge.

MORROW, Circuit Judge. This is a libel in rem by the Shell Company of California to establish a lien for fuel oil, of the value of $2,267.10, supplied August 14, 1919, in the port of San Francisco, to the steamer Admiral Goodrich, owned by the claimant, the Pacific Steamship Company, a corporation of Portland, Me. The fuel oil was ordered by the Gulf Steamship Company, the charterer of the vessel. The charter is a time charter, dated July 23, 1919, for three calendar

months from the day of the delivery of the vessel fitted for the service. It provides:

\* \* \* \* \* \* \* \* \* \*

"3. That the charterers shall provide and pay for \* \* \* fuel oil.
\* \* \*

\* \* \* \* \* , \* \* \* \* \*

"5 B. Charterers agree to keep vessel free from liens and redeliver her free from liens."

The Act of June 23, 1910, relating to liens on vessels for repairs, supplies, or other necessaries (36 Stat. pt. 1, 604 [Comp. St. §§ 7783–7787]) incorporated in the Merchant Marine Act of June 5, 1920 (41 Stat. pt. 1, 988), provides, among other things:

"That any person furnishing \* \* \* supplies, or other necessaries \* \* \* to a vessel, whether foreign or domestic, upon the order of the owner \* \* \* of such vessel, or of a person by him \* \* \* authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"Sec. 2. That the following persons shall be presumed to have authority from the owner \* \* \* to procure \* \* \* supplies, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. \* \* \*

"Sec. 3. That the officers and agents of a vessel specified in section 2 shall be taken to include such officers and agents when appointed by a charterer. \* \* \* But nothing in this act shall be construed *to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, \* \* \* or for any other reason, the person ordering the \* \* \* supplies, or other necessaries was without authority to bind the vessel therefor.*"

It appears from the evidence that, at the time the fuel oil was delivered to the Admiral Goodrich, Cornelius F. Buckley, Jr., was the assistant manager of the fuel oil department of the Shell Oil Company of California, with full charge of deliveries to steamers in San Francisco Bay; that Mr. Hartman, the president of the Gulf Mail Steamship Company, called up Mr. Buckley on the telephone about 10 o'clock on the morning of August 14, 1919, and told him they wanted oil for the Admiral Goodrich; that they were in a great hurry for it; that she was due to leave that evening. Delivery of the oil was made at about 2 o'clock in the afternoon of the same day.

As to the ownership of the Admiral Goodrich, Buckley testified that he did not know who owned the steamer; knew she was advertised as one of the Gulf Mail steamers; did not make any inquiry as to ownership; did not know there was a charter of the steamer. The Gulf Mail was acting as manager of the steamer, and he sold the oil to them as ordered by the manager of the steamer and charged it to the steamer and owners. He never had been able to find out who the owners of these steamers were. They changed around so often. The Admiral Line, and the Pacific Steamship Company, the Alaska Steamship Company, and the Pacific-Alaska Steamship Company, and another company were shifting their ships around so that he could not keep track of who the owners were; in fact, at one time he remembered a case where he tried to find out who the owner of the steamer was, and

they were very huffy about it, and thought he was trying to get control of the stock. So he gave that up as bad business. He never could get any business if he followed those tactics.

On cross-examination Buckley testified that he had never had occasion to furnish fuel oil to the Admiral Goodrich prior to that time. He was familiar with the outstanding contract to furnish fuel oil to specified steamers of the Gulf Mail Steamship Company, and knew that the Admiral Goodrich was not in that contract.

The court below held that:

"The relation between the libelant and claimant on furnishing oil to the Admiral Goodrich and its disclosed knowledge of the confusion of tue steamers on the *Admiral* Line, to which the charterer was not a party or in any way identified, is conclusive that the libelant must be charged with such knowledge of ownership as required reasonable diligence to ascertain the terms of the charter party, and such diligence would have disclosed that the terms of the charter party prohibited the charterer from binding the vessel."

The libelant's assistant manager of its fuel oil department, in full charge of deliveries to steamers in San Francisco Bay did not know who owned the steamer, and he made no inquiry as to ownership. He did not know that there was a charter of the steamer. He had never had occasion to furnish fuel oil to the Admiral Goodrich prior to that time. He was familiar with the outstanding contract to furnish oil to specified steamers of the Gulf Mail Steamship Company, and knew that the Admiral Goodrich was not in that contract. Manifestly his lack of knowledge of the ownership of the Admiral Goodrich was because he made no inquiry as to that ownership, and his knowledge that there was a contract between the libelant and the Gulf Mail Steamship Company to furnish fuel oil for certain specified steamers of the latter company and that the Admiral Goodrich was not in the contract was sufficient to place him upon inquiry as to such ownership and the authority of the Gulf Mail Steamship Company to order fuel oil for that vessel upon the security of a maritime lien, and he was not entitled to rest upon any presumptions whatever until these inquiries had been made.

This question has been conclusively determined by the Supreme Court in its recent decision in United States v. Carver, 43 Sup. Ct. 181, 67 L. Ed. ——, where the court, referring to the language of the act now under consideration, said:

"We regard these words [of the statute] as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry; they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty in finding out both."

This is precisely the situation of the libelant in this case. It does not appear that there would have been any difficulty in finding out that there was a charter of the vessel and its terms, or, if such information

was withheld by the persons in charge of the vessel, the libelant might well have declined to deliver the oil without the information and authority that would fasten a lien, if a lien was deemed necessary.

The decree of the lower court is affirmed.